UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHIRLEY M. DRUING,<br>             **Plaintiff,**<br>    v.<br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br>             **Defendant.** | NO. CV 17-3867-KS<br><br>MEMORANDUM OPINION AND ORDER |

## INTRODUCTION

Shirley M. Druing ("Plaintiff") filed a Complaint on May 23, 2017, seeking review of the denial of her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (Dkt. No. 1.) The parties have consented, as authorized by 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 12, 14-15.) On May 2, 2018, the parties filed a Joint Stipulation ("Joint Stip."). (Dkt. No. 25.) Plaintiff seeks an order reversing the final decision and awarding benefits or, in the alternative, remanding the matter for further proceedings. (Joint Stip. at 17.) The Commissioner requests that the ALJ's decision be affirmed or, in the alternative, remanded

1

for further proceedings. (*Id.* at 18.) The Court has taken the matter under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On February 18, 2014, Plaintiff, who was born on July 27, 1966[1], filed an application for SSI. (Administrative Record ("AR") 16.) Plaintiff alleged disability commencing on July 31, 2012, due to lupus, bronchitis, depression, and a thyroid condition. (*Id.*) On June 11, 2014, the Social Security Administration denied Plaintiff's application (AR 84-86), and on July 25, 2014, Plaintiff requested a hearing (AR 87). On January 4, 2016, Administrative Law Judge Elizabeth Watson (the "ALJ") held a hearing. (AR 31-64.) Plaintiff, who was represented by counsel, testified before the ALJ, as did vocational expert Ronald Hatakeyama ("VE"). (AR 31.) On January 21, 2016, the ALJ issued an adverse decision denying Plaintiff's application for SSI. (AR 13, 16-25.) On April 4, 2017, the Appeals Council denied Plaintiff's request for review. (AR 1.) This timely appeal followed.

## SUMMARY OF ADMINISTRATIVE DECISION

Applying the five-step evaluation process, the ALJ found at Step One that Plaintiff had not engaged in substantial gainful activity since February 18, 2014, the date she filed her application. At Step Two, the ALJ determined that Plaintiff had the following severe impairments: lupus; major depressive disorder; bilateral knee osteoarthritis; and goiter. (AR 18.) The ALJ found at Step Three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926)). (AR 18-19.) The ALJ then determined that Plaintiff had

---

[1] At forty-seven years or age when she filed for SSI, Plaintiff was considered a "younger individual age 45-49" under agency guidelines. 20 C.F.R. § 416.963.

2

the residual functional capacity ("RFC") to perform sedentary work with the following limitations (AR 19-24):

> no more than occasional bilateral push and/or pull with upper and lower extremities. The [Plaintiff] is limited to no more than occasional climbing of ramps or stairs and no climbing of ladders, ropes, or scaffolds. She is limited to no more than occasional stooping, kneeling, crouching, and crawling. The [Plaintiff] is limited to no more than frequent bilateral handling and fingering. She must avoid even moderate exposure to workplace hazards such as operational control of heavy machinery, hazardous machinery, and unprotected heights. The [Plaintiff] is limited to understanding and carrying out simple instructions in a work environment with few workplace changes. She is limited to no more than occasional contact with the general public, coworkers, and supervisors.

(AR 19-20.)

Based on this RFC, at Step Four, the ALJ determined that Plaintiff could not perform any past relevant work. (AR 24.) Plaintiff previously worked as an appointment clerk (DOT[2] 237.367-010) for the Los Angeles Unified School District. (*Id.*) At Step Five, the ALJ found that she could perform other work in the national economy, including the occupations of lens inserter, optical goods (DOT 713.687-026) and jewelry preparer (DOT 700.687-062).[3] (AR 24-25.) The ALJ thus concluded that Plaintiff was not disabled, as defined in the Social Security Act. (*Id.*)

---

[2] "DOT" refers to the Dictionary of Occupational Titles.
[3] The ALJ also found that Plaintiff could perform the sedentary unskilled occupation of "bench assembler (DOT 739.687-182)," but 739.687-182 is the DOT code for "table worker" or "spotter," not bench assembler, which is coded as 706.684-042 for agricultural equipment and 706.684-022 for any industry. (*See* AR 24; *see also* AR 60 (VE's testimony).)

3

# STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citation omitted).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation omitted); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or that, despite the legal

error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (citations omitted).

**DISCUSSION**

The parties present a single disputed issue: Whether the ALJ properly considered the opinion of Plaintiff's treating physician, John Rastegar, M.D. (Joint Stip. at 4.) Dr. Rastegar at the Central Neighborhood Health Foundation had treated Plaintiff "every month" since 2011. (AR 305.) Dr. Rastegar diagnosed Plaintiff with: lupus; thyroid disorder; urinary tract infection; gastroesophageal reflux disease; chronic obstructive pulmonary disease; bradycardia; chronic pain; and right knee pain. (*Id.*) In a Pulmonary Residual Function Capacity Questionnaire dated November 25, 2015, Dr. Rastegar opined that Plaintiff's respiratory condition would "constantly" interfere with her attention and concentration necessary "to perform simple work tasks during atypical workday." (AR 306-07.) He indicated that Plaintiff was "incapable of even 'low stress' jobs" (AR 307) and Plaintiff could walk less than one block without rest or severe pain (AR 308). He further opined that Plaintiff had to avoid all exposure to cigarette smoke and even moderate exposure to extreme cold, high humidity, fumes, solvent/cleaners, fumes, odors, gases and dust. (AR 309.) He further stated that Plaintiff's pulmonary limitation would cause her to be absent from work more than four days per month. (*Id.*)

Dr. Rastegar's severe restrictions conflict with the opinions of other physicians. Specifically, consultative examiner Azizollah Karamlou, M.D., a board certified internist, conducted an internal medicine consultation on May 13, 2014 and determined that Plaintiff was unable to walk on uneven terrain, climb ladders, work at unprotected heights, and lift/carry more than 10 lbs occasionally but retained the residual functional capacity to stand and/or walk for six hours, sit for six hours, and occasionally: push or pull; crawl; bend; kneel; and balance. (AR 287-292.) Dr. Karamlou assessed no environmental restrictions.

5

(*Id.* 292.) Additionally, David L. Hicks, M.D., a family or general practitioner, reviewed Plaintiff's medical records as a state agency medical consultant and determined that Plaintiff retained the residual functional capacity to lift/carry 10 lbs occasionally and less than 10 lbs frequently, stand or walk for a total of two hours, sit for a total of six hours, and occasionally climb ramps/stairs, climb ladders/ropes/scaffolds, balance, stoop, kneel, crouch, or crawl. (AR 65-74.) Dr. Hicks stated that Plaintiff should avoid even moderate exposure to hazards, *e.g.* machinery and heights, but assessed no other environmental limitations. (*Id.* 74.)

Plaintiff contends that the ALJ did not give legally sufficient reasons for rejecting Dr. Rastegar's opinion as a treating physician. (Joint Stip. at 6.) Defendant argues that the ALJ properly assigned limited weight to Dr. Rastegar's opinion and gave specific and legitimate reasons supported by substantial record evidence for doing so. (*Id.* at 8.) For the reasons discussed below, the Court finds the ALJ gave legally sufficient reasons for discounting Dr. Rastegar's opinion.

**I. Applicable Law**

In the hierarchy of medical opinions, the opinion of a treating source is generally entitled to greater weight than the opinion of doctors who do not treat the claimant because treating sources are "most able to provide a detailed, longitudinal picture" of a claimant's medical impairments and bring a perspective to the medical evidence that cannot be obtained from objective medical findings alone. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *see also* 20 C.F.R. § 416.927(c)(2). Thus, to reject an uncontradicted opinion of a treating or examining physician, the ALJ must provide "clear and convincing reasons that are supported by substantial evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017); *Ghanim v. Colvin*, 763 F.3d 1154, 1160-61 (9th Cir. 2014). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial

evidence." *Trevizo*, 871 F.3d at 675. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). In determining how much weight to accord to a doctor's opinions, the ALJ considers the factors in 20 C.F.R. § 416.927(c)(2)-(6), including the "[n]ature and extent of the treatment relationship," any supporting evidence or explanation a medical source provides for a medical opinion, and the consistency of a medical opinion with the record as a whole. 20 C.F.R. § 416.927(c)(2)-(6).

## II. The Medical Evidence

Dr. Rastegar had a long history of treating Plaintiff on a regular basis as her primary care physician dating from 2011. (*See* AR 305.) He diagnosed Plaintiff with lupus, a thyroid disorder, urinary tract infection, gastroesophageal reflux disease, chronic obstructive pulmonary disease, bradycardia, and chronic right-knee pain, in assessments dated November 25, 2015. (*Id.* 305.) Over time, he prescribed Plaintiff various medications for her conditions, including QVAR, Albuterol Sulfate, Neurontin, and Prilosec. (AR 307.) In a Pulmonary Residual Functional Capacity Questionnaire and Thyroid Disorder Medical Assessment Form, both dated November 25, 2015, Dr. Rastegar opined that Plaintiff was incapable of even "low [work-related] stress," and that Plaintiff was restricted to "less than a full range of sedentary work." (AR 307, 311-15.) Dr. Rastegar also opined that Plaintiff would be absent from work more than four times per month due to her severe impairments. (AR 309, 315.) Further, Dr. Rastegar indicated that Plaintiff's respiratory symptoms would "constantly" interfere with "the attention and concentration to perform even simple work tasks during a typical work day." (AR 306-07.)

Dr. Rastegar's opinion about Plaintiff's limitations is inconsistent with many of his progress notes. For example, on May 21, 2014, Plaintiff sought treatment for knee and wrist

7

pain, but the treatment records indicate this was a "routine general medical examination." (AR 316-17.) Dr. Rastegar described Plaintiff as "well-developed and nourished[;]" he observed that her cardiovascular and abdominal exams were normal; and he noted that she had tenderness in both knees and wrist, but no swelling or erythema. (AR 317.) On July 29, 2014, Plaintiff visited Central Neighborhood Health Foundation requesting pain medication for knee and wrist pain. (AR 318.) The results of her cardiovascular and respiratory exams were normal. (*Id*.) On August 18, 2014, Plaintiff sought treatment for body aches that had troubled her for two days, but she was assessed as being "in no apparent distress." (AR 320.) She was prescribed rest, hydration, Tylenol, Sudafed and Phenergan DM, a cough syrup. (AR 321.) In October 2014, Plaintiff was assessed with a vitamin deficiency, sicca syndrome—an auto immune condition that causes dry mouth and was sent to have a chest x-ray. (AR 333.) Her prescriptions included vitamin D capsules, Claritin, Motrin, omeprazole Ambien for insomnia, and an asthma inhaler. (*Id.*) The treatment notes from this visit indicate that Plaintiff was to return in four weeks to see Dr. Rastegar. (*Id.*) In September 2014, Plaintiff returned to discuss lab results and complained of a runny nose. (AR 325.) Her cardiovascular and respiratory exams were again normal and her muscle strength was "full and strength symmetric, normal muscle tone without any atrophy or abnormal movements." (AR 326.) Her mental assessment found no depression, anxiety, or mental disturbance. (*Id*.)

Dr. Rastegar's progress notes for October 10, 2014 indicate that Plaintiff had an occasional skipped heart beat (AR 330), but her muscle strength remained "full and strength symmetric." (*Id*.) She was given an EKG and scheduled for a second echo cardiogram for cardiac arrhythmia. *(Id*.) On October 24, 2014, Plaintiff was seen for medication refills and to get lab and x-ray results. (AR 332.) In November 2014, Plaintiff complained of dizziness, on and off light headedness and a recent fall. (AR 336.) Her cardiovascular and respiratory exams were again normal. She was seen again later in November 2015, to follow up on an emergency room hospital visit due to chest pain. (AR 338.) Plaintiff's

8

cardiovascular and respiratory exams were normal and she was scheduled to be seen again in three weeks. (AR 339.) A December 2014 visit was for medication refills. (AR 341.)

In January 2015, Plaintiff was seen for a well woman exam (AR 345) and in February 2015 she refilled her medications (AR 347). In February and March 2015, Plaintiff was seen regularly for medication refills, with complaints of nausea and back pain. (AR 349, 350.) In May 2015, Plaintiff complained of "heart problems," but the results of a cardiovascular exam were normal (AR 352). In June 2015, Plaintiff had a thyroid cyst. (AR 356.) Plaintiff also saw a cardiologist who detected no heart murmur. (AR 356.) At an office visit on September 16, 2015, Dr. Rastegar assessed Plaintiff with hematuria, a condition that involves the presence of blood in the urine associated with a urinary tract infection ("UTI"). (*See* AR 366, 372.) While the treatment notes for this period indicate Plaintiff was waiting for a surgeon's clearance letter to proceed with a thyroid surgery, nothing in the record suggests Plaintiff experienced any urgent or severe change in her condition. (AR 366.) Indeed, Plaintiff was prescribed medications and told to return in three weeks to see Dr. Rastegar. (*Id.*)

On November 20, 2015, Plaintiff saw Dr. Rastegar and the only notations are normal vital signs. (AR 373.) Five days later at a November 25, 2015 office visit, Dr. Rastegar's physical examination noted "[costovertebral angle] tenderness," and "[m]ultiple [j]oint tenderness." (AR 371.) The physical exam indicated that Plaintiff had "[l]imited [range of motion] or bilateral ankles, knee and shoulder." (*Id.*)

Plaintiff was also seen by Dr. Weinberg, a rheumatology specialist, for an "ordered lab test and right knee [x-]ray." (AR 372.) Dr. Weinberg purportedly treated Plaintiff from February 11, 2014 to January 15, 2015, but the record contains just six pages of handwritten progress notes from Dr. Weinberg for that period. (AR 406-411.) Even though Dr. Weinberg's progress notes are difficult to decipher (*see, e.g.*, AR 406), it is possible to make

out that Dr. Weinberger's observations on each visit are relatively brief and, where readable, the notations are unremarkable – very brief comments about Plaintiff's condition and a summary of Plaintiff's vital signs at each visit. (*See, e.g.*, AR 411.)

As noted above, Dr. Karamlou, a board certified internist, conducted a consulting examination of Plaintiff on May 13, 2014 and determined that Plaintiff was unable to walk on uneven terrain, climb ladders, work at unprotected heights, and lift/carry more than 10 lbs occasionally but retained the residual functional capacity to stand and/or walk for six hours, sit for six hours, and occasionally: push or pull; crawl; bend; kneel; and balance. (AR 287-292.)

Finally, Dr. Hicks, a family or general practitioner, reviewed Plaintiff's medical records as a state agency medical consultant and determined that Plaintiff retained the residual functional capacity to lift/carry 10 lbs occasionally and less than 10 lbs frequently, stand or walk for a total of two hours, sit for a total of six hours, and occasionally climb ramps/stairs, ladders/ropes/scaffolds, balance, stoop, kneel, crouch, or crawl. (AR 65-74.) Neither doctor assessed environmental limitations beyond a limitation on machinery and heights. Because Dr. Rastegar's opinion is contradicted by other physicians, the ALJ was required to give specific and legitimate reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830-31.

**III. Analysis**

After summarizing the record evidence dating from August 2013 through December 2015 (AR 20-22), the ALJ gave two primary reasons for discounting Dr. Rastegar's opinion. First, the ALJ noted that Plaintiff "ha[d] basically received conservative outpatient treatment for her chronic medical conditions." (AR 23.) Second, the ALJ gave Dr. Rastegar's opinion "less weight" because "it [was] inconsistent with the actual progress notes and other treating

records provided." (*Id.*) As explained below, these are specific and legitimate reasons supported by substantial evidence in the record for assigning little weight to Dr. Rastegar's opinion.

**A. History of Conservative Treatment**

Generally, an ALJ may reject a treating physician's opinion if the physician prescribed a conservative course of treatment. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). Here, the ALJ met her burden by giving a detailed review of Plaintiff's treatment history, which included, but was not limited to, the following:

(1) at her initial evaluation on August 5, 2013, despite a 13 year history of lupus, Plaintiff "was not currently taking any medications (AR 30, 271);

(2) Plaintiff was described as a "tobacco abuser at this time, and on many subsequent office visits. Nevertheless, the physical examination was within normal limits." (AR 20);

(3) Plaintiff complained of joint aches but on August 8, 2013 "admitted she had not seen a rheumatologist in three years, and was only taking over-the-counter Tylenol for pain" (AR 21, 275);

(4) Treatment notes from January 2014 indicate Plaintiff had difficulty "walking two blocks and had chest pain due to physical exertion" (AR 21, 263) and a chest x-ray findings were compatible with bronchitis, but at a February 5, 2014 consultation Plaintiff "stated she was feeling better" (AR 21, 265); and

(5) Plaintiff was treated "on a few further occasions through January 15, 2015 for various diffuse joint pains, largely affecting the knees."

The ALJ also explained that Plaintiff's "physical examinations on virtually all of the office visits showed, at most, no more than some tenderness in the affected areas, with (at most) no more than mildly limited range of motion." (AR 23.)

After a review of the entire medical record, the Court finds that the record evidence supports the ALJ's assessment that, despite a long history of lupus and other medical complaints, Plaintiff's course of treatment was relatively conservative. A Clinical Summary from Central Neighborhood Health Foundation dated August 8, 2013 indicated that Plaintiff reported aching joints but had not had a rheumatology visit in 3 years and was taking Tylenol for pain. (AR 275.) The treatment notes from that visit indicate her hands were "very tender to palpation," but the range of motion was intact and her cardiovascular exam was normal. (*Id.*) Plaintiff was found to have an active goiter, a throat culture was done and she was prescribed Zithromax. (*Id.*) In September 2013, when she returned for lab results, the treatment notes indicate that she had normal range of motion in her neck, her cardiovascular exam was again normal, her lungs clear and her "muscle strength full and strength symmetric, normal muscle tone without any atrophy or abnormal movements. (AR 279.) The ALJ referenced this record evidence as a basis for giving Dr. Rastegar's opinions less weight. (*See* AR 22-23.)

Accordingly, the ALJ's first reason for discounting Dr. Rastegar's opinions about Plaintiff's limitations is specific and legitimate and supported by substantial record evidence and, therefore, free of legal error.

**B. Dr. Rastegar's Opinion Is Inconsistent With His Own Treating Records**

The ALJ also explained that Dr. Rastegar's opinion regarding Plaintiff's limitations were "inconsistent with the actual progress notes and other treating records provided." (AR 23.) When a physician's opinion contradicts clinical findings, the ALJ is not required to

12

accept that physician's opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *see also* 20 C.F.R. § 416.927(c)(4).

As stated above, on November 25, 2015 Dr. Rastegar opined that Plaintiff's respiratory condition would "constantly" interfere with her attention and concentration necessary "to perform simple work tasks during atypical workday." (AR 306-07.) He indicated that Plaintiff was "incapable of even 'low stress' jobs" (AR 307) and Plaintiff could walk less than one block without rest or severe pain (AR 308). He further opined that Plaintiff had to avoid all exposure to cigarette smoke and even moderate exposure to extreme cold, high humidity, fumes, solvent/cleaners, fumes, odors, gases and dust. (AR 309.) He further stated that Plaintiff's pulmonary limitation would cause her to be absent from work more than four days per month. (*Id.*)

Despite these severe restrictions, Dr. Rastegar's clinical notes indicate that Plaintiff exhibited normal respiratory function throughout her treatment history. (AR 337, 339, 352, 356, 358, 360, 363, 368.) The treatment records reflect that her lungs were consistently clear to auscultation with no rales, rhochi, or wheezes noted in the records. (AR 271, 273, 276, 279, 283, 317-18, 325, 335, 348, 375, 408.) Dr. Rastegar's treatment notes reflect that numerous normal cardiovascular examinations and when Plaintiff was referred to a cardiologist for chest pain, no murmur was detected. (AR 321, 324, 328, 337, 339, 348, 352, 356.) In sum, there is substantial evidence in the record to support the ALJ's finding that Dr. Rastegar's clinical findings contradict his assessment of severe limitations, and, therefore, the ALJ did not err in discounting these portions of his opinion. *See Bayliss*, 427 F.3d at 1216.

Accordingly, having carefully reviewed the ALJ's decision, her reasoning, and the entire medical record, the Court finds that the ALJ provided specific and legitimate reasons

supported by substantial record evidence for discounting Dr. Rastegar's opinion.[4] Therefore, the decision of the Commissioner must be affirmed.

**CONCLUSION**

For the reasons stated above, the Court finds that the Commissioner's decision is supported by substantial evidence and free from material legal error. Neither reversal of the ALJ's decision nor remand is warranted.

Accordingly, IT IS ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner of the Social Security Administration.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATE: August 8, 2018

_____
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE

---

[4] The Commissioner also argues that the ALJ provided a third specific and legitimate reason for giving less weight to Dr. Rastegar's opinions, *i.e.*, that his opinions conflicted with the opinions of other licensed physicians. (Joint Stip. at 14-16.) However, because the Court has already determined that the ALJ's first two reasons for discounting Dr. Rastegar's opinions are free of legal error, the Court need not address this third argument.

14